**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEVESH M. NIRMUL, LAWRENCE C. WEINER, and MICHAEL B. WINN, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendant. | Civil Action No. 10-cv-5586 (SDW)<br><br><br>**OPINION**<br><br><br>October 31, 2011 |

**WIGENTON**, District Judge.

Before the Court is Defendant BMW of North America, LLC's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and Motion to Strike Class Allegations pursuant to Federal Rule of Civil Procedure 23.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367.  Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons stated below, this Court **GRANTS** Defendant's Motion to Dismiss for lack of subject matter jurisdiction and **DENIES** all other motions as **MOOT**.

I. **BACKGROUND**

This matter involves Plaintiffs Devesh M. Nirmul ("Nirmul"), Lawrence C. Weiner ("Weiner"), and Michael B. Winn ("Winn") (collectively, "Plaintiffs"), and BMW of North America, LLC ("Defendant" or "BMW").

In this consolidated class action, Plaintiffs seek to represent a putative nationwide class of owners and lessees of certain makes and model years of BMW vehicles. On April 21, 2011,

BMW submitted a Motion to Dismiss Plaintiffs' Individual Claims pursuant Federal Rule of

Civil Procedure 12(b)(1) and 12(b)(6) alleging that Plaintiffs individual claims fail because they

lack standing and because they fail to satisfy essential elements of their claim as a matter of law.

The issue before this Court is (1) whether Plaintiffs lack Article III standing in bringing a claim

for breach of warranty and the New Jersey Consumer Fraud Act ("NJFCA"), (2) whether

Plaintiffs have sufficiently pled their causes of action, and (3) whether this case is suitable for

treatment as a class action.

## II.   FACTS[1]

In 2006, BMW announced that it had completed development of its N54 engine, which

incorporated state of the art technology including twin turbo engines, the fuel injection system,

and a highly pressurized fuel pump, that were designed to work together to eliminate "turbo lag."

(Pls.' Br. 3.)  BMW advertised the N54 engine, Fuel Injection System and Fuel Pump

combination as having increased fuel efficiency and completely eliminated turbo lag, and as

superior to that of vehicles manufactured by other companies.  (Compl. ¶ 3.)  Plaintiffs claim

they were repeatedly exposed to these representations, relied upon them, and purchased or leased

their vehicles as a result.  (Pls.' Br. 3.)

In January 2010, Nirmul, a Florida resident, leased a 2010 BMW 335i.  (Def.'s Br. 3.)  In

2008 Weiner, a New Jersey resident leased a 2008 BMW 335xi coupe.  (*Id.*)  On March 31,

2007, Winn, a Texas resident, purchased a 2008 BMW 535i.  (*Id.*)

Plaintiffs allege that the high pressure fuel pump ("HPFP") in the vehicles are defective

and that BMW manufactured, distributed, advertised, marketed, promoted, warranted, and sold

the vehicles throughout the United States without disclosing the defect.  (Pls.' Br. 2.)  Nirmul

claims that after driving the 2010 BMW 335i for approximately 10,799 miles, the HPFP was

---

[1] Defendant accepted as true the well-pleaded allegations in the Consolidated Amended Class Action Complaint.

replaced at no cost to him. (Def.'s Br. 3.)  In June 2010, Weiner claims that there were two

incidents where his vehicle's "engine malfunction light" came on, as a result, the vehicle was

towed to a BMW service center; he alleges that he was told his HPFP failed each time. (*Id.*)

Weiner's HPFP is covered by a 10 year/120,000 mile warranty.  (*Id.*)  In November 2010, Winn

claims the HPFP on his vehicle failed after being driven for approximately 35,000 miles.  (*Id.*)

BMW vehicles are warranted by a 48 month/50,000 mile warranty that states that BMW

will repair or replace defective parts (the "Warranty").  (Pls.' Br. 6.)  In May 2010, BMW issued

a Technical Service Bulletin (the "Bulletin") addressing the HPFP failures by extending the

Warranty of the fuel pump to 10 years or 120,000 miles.  (Id.)  The Bulletin committed to "only

replacing failed HPFPs, only if the failure manifested during the extended warranty period. (*Id.*)

On October 26, 2010, BMW announced a recall of "some model year 2007-2010

BMW's" equipped with N54 engines which featured BMW's Fuel Injection System and Fuel

Pump (the "Recall").  (*Id.*)  The Recall stated it "would entail replacement of the [HPFP] and/or

a software update."  (*Id.*)  Plaintiffs allege that BMW has yet to correct the defect, despite its

most recent Recall.  (*Id*. at 8.)

On March 21, 2011, Plaintiffs filed their Amended Complaint on behalf of all persons

and entities in the United States that purchased or leased a BMW automobile in any State

equipped with a BMW N54 engine from 2006 to the present.  (Am. Compl., ECF No. 16.)

Thereafter, Defendant filed the instant motions.

III.   **MOTION TO DISMISS**

a.   **LEGAL STANDARD**

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)).  When reviewing a motion to dismiss, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233.

As a general rule, a district court deciding a motion to dismiss may consider only the contents of the pleadings.  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) (internal citation omitted).  However, there exists an exception to that general rule in that "'[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.'" Cooper v. Samsung Elecs. America, Inc., 374 F. App'x 250, 253 n.3 (3d Cir. Mar. 30, 2010) (quoting Pryor, 288 F.3d at 560).

4

b. **Standing**

To bring a suit in federal court, a plaintiff must have standing pursuant to Article III of the United States Constitution.  To establish Article III standing, a plaintiff must show: (1) injury in fact, (2) causation, and (3) redressability.  *See Horvath v. Keystone Health plan E., Inc.*, 333 F.3d 450, 455 (3d Cir. 2003); *Lujan v. Defenders of Wild-life*, 504 U.S. 555, 560-61 (1992).  "To demonstrate an injury in fact, a plaintiff must demonstrate the "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 561.  Furthermore, "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  *Id.*  Last, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*  "[T]he injury must affect the plaintiff in a personal and individual way." *Id.*

Defendant argues that Plaintiff Weiner did not suffer an injury as the HPFP in his vehicle never actually failed.  (Def.'s Br. at 5.)  Defendant also argues that Nirmul and Winn lack standing to assert a NJCFA claim because the statute does not apply to purely out-of-state transactions.  (*Id.*)  Plaintiffs, however, argue that Weiner has standing because his vehicle did suffer a HPFP defect; and that Nirmul and Winn can bring a NJCFA claim despite the fact that their transactions originated out-of-state.

### i. Weiner

"A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)(citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). "In reviewing a facial attack, [a] court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." I*d.* "In reviewing factual attack, [a] court may consider evidence outside of the pleadings." *Id.*; *see also Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir.1997) (citing *Mortensen*, 549 F.2d at 891). A trial court addressing a factual attack on jurisdiction affords no presumptive truthfulness to the facts in the complaint. *See Mortensen*, 549 F.2d 891. "[T]he existence of disputed material facts will not preclude [a] trial court from evaluating for itself the merits of jurisdictional claims." *Id.* "Moreover, a plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the sound discretion of the trial court." *Gibbs v. Buck*, 307 U.S. 66, 71-71 (1939). In *Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.* the Third Circuit outlined procedures for ensuring that a 12(b)(1) factual attack be based on an adequate factual record. *See* 673 F.2d 700, 711-12 (3d Cir. 1982). There, the court stated that "[i]f [a] defendant raises no challenge to the facts alleged in the pleadings, the court may rule on the motion by accepting the allegations as true." *Gould Electronics Inc., v. United States of America et al.*, 220 F.3d 169, 177 (3d Cir. 2000)(citing *Int'l Ass'n of Machinists & Aerospace Workers*, 673 F.2d at 711. However, "[i]f the defendant contests any allegations in the pleadings, by presenting evidence, the court must permit the plaintiff to respond with evidence supporting jurisdiction." *Id.* (citing *Int'l Ass'n of Machinists & Aerospace Workers*,

673 F.2d at 711-12).  "The court may then determine jurisdiction by weighing the evidence

presented by the parties."  *Id.* (citing *Int'l Ass'n of Machinists & Aerospace Workers*, 673 F.2d at

711-12).  "If the plaintiff does not meet and controvert the defendant's factual assertions by

affidavits or other sworn proofs, then the district court must determine whether it has subject

matter jurisdiction based upon the factual context presented by the defendant."  *Int'l Ass'n. of*

*Machinists & Aerospace Workers*, 673 F.2d at 712.

Here, BMW has made a factual challenge to Plaintiff Weiner's standing by arguing that

Weiner has not suffered an injury and provides evidence to support its argument.  Defendant

proffers a declaration by Vlodek Olczak, a powertrain/chassis manager for Defendant who has

personal knowledge of the facts related to Weiner's vehicle.  (*See* Def.'s Br. 6-7.)  Olczak's

declaration and the accompanying documents, which entail reports regarding servicing

performed on Weiner's car, describes the complications that Weiner faced with his vehicle

during his lease, but does not state that Weiner's HPFP failed or was replaced.  *See id.*

Contrarily, Plaintiffs submit that Weiner was told on two separate occasions by a representative

from an authorized BMW dealership that his fuel pump failed.  (*See* Pls.' Reply Br. at 16 (citing

Compl. ¶¶ 86-89).)  However, Plaintiffs failed to provide any evidence controverting

Defendant's assertion.  Instead, Plaintiffs stated in their opposition brief that all documents

pertaining to Weiner's vehicle are in Defendant's possession and that the documents submitted

by Defendant regarding Weiner's vehicle may not be exhaustive.  (*See* Pls.' Br. at 17.)

Defendant disputes that it has any such documents and suggests that the dealership where Weiner

received services for his vehicle possesses such documents and would have provided Plaintiff

Weiner with copies of such documents.  Plaintiff did not provide any supporting documents to

rebut BMW's factual attack on Plaintiff Weiner's jurisdiction.  Plaintiff has failed to factually

counter BMW's factual jurisdictional attack and satisfy his burden regarding establishing

jurisdiction.  Therefore, based on the factual context presented by Defendant, Weiner's HPFP did

not fail, to wit, Weiner cannot show injury in fact.

### ii.   Nirmul and Winn's Standing Under NJCFA

Defendant argues that only persons who purchased their vehicles in New Jersey can bring

claims under the New Jersey Consumer Fraud Act.  It follows, Defendant argues, that neither

Nirmul, nor Winn have standing to bring their claims because Nirmul purchased his car in

Florida and Winn purchased his in Texas.[2]  Defendant also argues that the Third Circuit as well

as New Jersey courts have held that New Jersey's conflict-of-laws rules require deference to the

interests of other states in applying their own consumer protection laws to the transactions of

their own citizens.  (*See* Def.'s Br. at 7.)  Plaintiffs argue that Defendant's argument puts the

carriage before the horse because it implicates Rule 23 requirements pertaining to a class

certification issue which Plaintiffs argue would be premature to raise at this stage of the

litigation.  Case law, however, suggest otherwise.

In *Cooper v. Samsung Electronics America, Inc.*, 2010 WL 1220946 (3d Cir. 2010), the

Third Circuit considered a similar issue to that presented here regarding NJCFA.  In *Cooper*, the

Third Circuit evaluated whether the lower court was correct in determining that the law of

plaintiff's home state should apply to a NJCFA claim.  *See generally Cooper*, 2010 WL

1220946.  Cooper was an Arizona resident who brought, among other claims, a NJCFA suit in

the District Court of New Jersey against Samsung for alleged defects with a television.  *See id.* at

*1.  The lower court determined that Arizona law had to apply to Cooper's consumer fraud

claim, and Cooper voluntarily dismissed his claim for the sole purpose of appealing the lower

court's decision.  *See id* at 2.  In affirming the District Court's decision, the Court of Appeals

---

[2] This Court treats Defendant's standing argument regarding NJCFA as a facial challenge on jurisdiction.

reasoned that since Cooper purchased his television in Arizona, he was not entitled to sue under NJCFA because the transaction bore no relationship to New Jersey other than the location of Samsung's headquarters. *See id.* at 4. Instead, the Court of Appeals reasoned that Cooper's claim bore the most significant relationship[3] to Arizona. *See id.*

Similarly here, Nirmul and Winn both purchased their vehicles outside of New Jersey, as such, keeping consistent with *Cooper*, they are not entitled to sue under NJCFA because the transactions in question regarding their vehicles bear no relationship to New Jersey except for the fact that BMW is headquartered in New Jersey. Therefore, Nirmul and Winn's claim bear the most significant relationship with their respective home states.[4]

## IV.   **CONCLUSION**

For the reasons stated above, this Court **GRANTS** Defendant's motion to dismiss for lack of subject matter jurisdiction, and **DENIES** the remaining motions as **MOOT**.

---

[3] The *Cooper* court applied the most significant relationship test, which is now applied in New Jersey to resolve conflict of law issues. Under the "most significant relationship" test implementing New Jersey law, a court must first determine whether an actual conflict exists between the laws of the two states. The second step is to weigh the factors in the Restatement corresponding to plaintiff's cause of action. Fraud and misrepresentation torts are covered in § 148 of the Restatement, which considers:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

RESTATEMENT (SECOND) OF THE CONFLICT OF LAWS § 148(2).

[4] Also similar to this case, plaintiff in *Cooper* argued that the District Court erred in resolving the choice-of-law determination concerning his NJCFA claim prematurely; however, the Court of Appeals rejected that argument. *See Cooper* 2010 WL 1220946 at *4.